IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEONARD POTOSKI, JR.,**<br>**JAMES MONSUER,**<br>**RICHARD R. CHABALA,**<br>**JOSEPH C. BOKAR,**<br>**JOSEPH L. PACE, and**<br>**PATRICK O'DONNELL,** | : <br> : <br> : <br> : <br> : <br> : <br> : | **CIVIL NO. 3:06-CV-2057** |
| **Plaintiffs** | : <br> : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : <br> : | |
| **WILKES UNIVERSITY,** | : <br> : | |
| **Defendant** | : <br> : | |

**M E M O R A N D U M**

     This employment discrimination case is scheduled to go to trial on November 8, 2010. The case was filed by Plaintiffs on October 19, 2006, and was originally assigned to the Hon. Thomas I. Vanaskie. On June 3, 2010, the case was reassigned to the Hon. James. F. McClure, and ultimately the case was reassigned to the undersigned.

     Presently before the court are various motions in limine filed by the parties. Defendant Wilkes University filed three motions in limine: (1) to Preclude the Submission of Future Lost Wage Claims to the Jury, (Doc. 88); (2) to Preclude the Imposition of Liquidated Damages at Trial, (Doc. 89); and, (3) to Preclude the Testimony of Richard Nardone, (Doc. 90).

     Plaintiffs Leonard Potoski, Jr., James Monsuer, Richard Chabala, Joseph C. Bokar, Joseph L. Pace, and Patrick O'Donnell filed seven motions in limine: (1) to Preclude the Expert Report and Testimony of James A. Stavros, CPA, (Doc. 91); (2) to Preclude the Expert Report and Testimony of Dr. Kevin R. Murphy

and the Expert Report of Dr. Frank Landy, (Doc. 103); (3) to Preclude the Expert Report and Testimony of Dr. Bernard Siskin, (Doc. 95); (4) to Exclude any Evidence of Plaintiffs' Successors/Replacements Beyond those Identified in Defendant's Responses to Discovery Requests, and those Identified in the Court's February 12, 2010 Opinion and Order, (Doc. 93); (5) to Exclude Evidence that there was a "Reorganization" or "Position Elimination" as Determined by the Court's February 12, 2010 Opinion and Order, (Doc. 101); (6) to Exclude the General Release Agreements, (Doc. 99); and, (7) to Exclude any Evidence of Plaintiffs Bokar's, Monsuer's, and Potoski's Failure to Reapply for the PSO-1 position, (Doc. 97).

The court will address each of these motions in turn.

## I.      Defendant's Motions in Limine

### A.      Motion in Limine to Preclude the Submission of Future Lost Wage Claims to the Jury

If it is determined that Defendant violated the ADEA and/or the PHRA, in addition to compensatory damages, Plaintiffs seek an award of front pay in lieu of reinstatement. "Front pay is an alternative to the traditional equitable remedy of reinstatement, which would be inappropriate where there is a likelihood of continuing disharmony between the parties or unavailable because no comparable position exists." *Donlin v. Philips Lighting N. Am. Corp.,* 581 F.3d 73, 86 (3d Cir. 2009) (internal citations omitted). Thus, an award of front pay is appropriate if Plaintiffs were victims of unlawful discrimination, and they "experience a loss of future earnings because [they] cannot be placed in the position [they] [were] unlawfully denied." *Id.*

Defendant seeks to preclude Plaintiffs from submitting this issue to the jury. Specifically, Defendant argues that it is up to the court to determine both whether front pay is appropriate, and, if so, the amount that equitably compensates Plaintiffs for their future lost wages. Defendant argues that, with six Plaintiffs, these issues would unnecessarily protract the jury's deliberations. For their part, Plaintiffs contend that other courts have submitted the issue of front pay to a jury, and that the jury in this case will be in the best position to hear testimony regarding Plaintiffs' reasonably calculated future losses. Plaintiff concedes that the court is not required to submit the issue of front pay to the jury, and that doing so would merely be advisory. (*See* Doc. 116, Pls.' Br. in Opp'n to Def.'s Mot. to Preclude Submission of Future Lost Wages to the Jury at 12); *see Donlin*, 581 F.3d at 88 n. 11 ("[A] District Court [is] not required to submit the issue of front pay to the advisory jury . . . because a bench trial is sufficient to determine an equitable award such as front pay.")

The court agrees with the arguments presented by Defendant. If this were a case involving one or two Plaintiffs, the court would see little problem in permitting a jury to render an advisory verdict on the issue of front pay; however, this is a case involving six Plaintiffs all of whom have different life circumstances and job prospects. The court sees little value in allowing a jury to become bogged down in the often abstract factors involved in determining a claimant's work and like expectancies. For each Plaintiff, the jury would have to determine the individual's work expectancy, life expectancy, and an appropriate cut-off date for an equitable award of front pay. *See Donlin*, 581 F.3d at 87 (discussing factors). This is cumbersome and tedious work for what would be a non-binding advisory award.

The court would rather reach these decisions on its own, at a separate hearing, in the event that Defendant is found to be liable.

Accordingly, the court will grant Defendant's motion in limine as to this issue. Plaintiffs shall not present any evidence concerning an appropriate award of front pay at trial. This includes any evidence concerning Plaintiffs' future earning capacities and life expectancies. Of course, Plaintiffs may submit evidence concerning their efforts to mitigate their damages, but such evidence will be submitted only as to the issue of mitigation. The court will not charge the jury on the issue of front pay. Instead, if Defendant is found to be liable on Plaintiffs' claims, the court will schedule an evidentiary hearing to determine the appropriateness of an award of front pay.

### B. Motion to Preclude the Imposition of Liquidated Damages at Trial

In their complaint, Plaintiffs assert that Defendant violated the ADEA and the PHRA by terminating their employment in favor of sufficiently younger workers, and that Defendant's proffered justification of departmental reorganization was merely a pretext designed to avoid liability under state and federal law.

As to Plaintiffs' ADEA claims, Defendant asserts that even if Plaintiffs' allegations are true, there are no facts suggesting that Defendant acted "willfully," which is the required state of mind for the imposition of liquidated damages under the ADEA, or that any of the Plaintiffs were "systematically targeted" for termination by Defendant. (Doc. 89, Defs.' Mot. and Br. in Supp. to Preclude the Imposition of Liquidated Damages at Trial at 8). In support of its argument, Defendant points out that it studied the issue of campus security "for over three years prior to making its decision to reorganize the public safety" department, (*id.* at 6),

4

and that all of the security officers were discharged on July 7, 2003, "regardless of their ages," (*id.* at 8). As to Plaintiffs' PHRA claims, Defendant contends that liquidated damages are not available. (*See id.* at 9-10.)

Plaintiffs assert that it is premature to rule pre-trial on whether the evidence is sufficient to support submitting to the jury the issue of whether to award liquidated damages under the ADEA. As to the PHRA, Plaintiffs submit that while the act prohibits punitive damages, the court should not read it to prohibit liquidated damages because of its broad remedial purpose.

At this time, the court will not preclude the submission of a liquidated damages charge to the jury. The parties agree that the ADEA provides for liquidated damages where a defendant's violation was "willful," 29 U.S.C. § 626(b), and that for purposes of that provision, the Supreme Court has defined willfulness as meaning that the defendant "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128-29 (1985). In most cases, the question of whether liquidated damages are warranted "will be dependent upon an ad hoc inquiry into the particular circumstances." *Kelly v. Matlack, Inc.*, 903 F.2d 978, 982 (3d Cir. 1990).

Although pretext alone is an insufficient basis to award liquidated damages, the Court of Appeals cited three instances that demonstrate an employer's willfulness: "(1) where evidence exists that shows that the employer had previously violated the ADEA; (2) where the termination of the employee came at a time when it would deprive him or her of a pension; or (3) when the circumstances of the violation itself were egregious, as in the systematic purging of older people from the employee staff." *Kelly*, 903 F.2d at 982 (*citing Dreyer v. Arco Chem. Co.*, 801 F.2d

651, 658 (3d Cir. 1986)).  At this stage of the proceedings, before trial commences, it would be premature to say that Plaintiffs cannot demonstrate willfulness. Accordingly, the Court will deny Defendant's motion without prejudice as to the issue of liquidated damages under the ADEA, and will permit Defendant to revisit this issue, if necessary, prior to submission of the case to the jury.

As to the PHRA, however, the court is persuaded that liquidated damages are impermissible.  Pennsylvania law clearly prohibits the imposition of punitive damages under the PHRA.  *See Hoy v. Angelone*, 720 A.2d 745, 751 (Pa. 1998) (holding that punitive damages are not available under the PHRA); *accord Gagliardo v. Connaught Labs.*, 311 F.3d 565, 570 n. 3 (3d Cir. 2002).  Furthermore, both the Supreme Court and Third Circuit have held, albeit in the context of the ADEA, that liquidated damages are intended to be punitive in nature.  *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985); *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 (3d Cir. 1995).  Given these conclusions, Plaintiffs are not entitled to the submission of a liquidated damages charge to the jury on their PHRA claims, and the court will grant Defendant's motion to preclude liquidated damages as to those claims.

C.    **Defendant's Motion in Limine to Preclude the Testimony of Richard Nardone**

Defendant seeks to preclude the testimony of one of Plaintiffs' experts, Richard Nardone, who authored two reports which opine that the cause of Plaintiffs' termination as security officers was age discrimination, and that Defendant's failure to rehire Defendants Chabala, Pace, and O'Donnell after they applied for the PSO-1 position was also age discrimination.  (*See* Doc. 90-9, Def.'s Ex. E, Jan. 28, 2008 Report of Richard Nardone, and Doc. 90-10, Def.'s Ex. F., Oct. 10, 2008

6

Supplemental Report of Richard Nardone.)  Defendant brings a *Daubert* challenge

by asserting that Mr. Nardone is not qualified as an expert, and his opinion is neither

reliable nor based upon factual data.

> In *Daubert*, the Supreme Court held that:

> Faced with a proffer of expert scientific testimony . . . the
> trial judge must determine at the outset . . . whether the
> expert is proposing to testify to (1) scientific knowledge
> that (2) will assist the trier of fact to understand or
> determine a fact in issue. This entails a preliminary
> assessment of whether the reasoning or methodology
> underlying the testimony is scientifically valid and of
> whether that reasoning or methodology properly can be
> applied to the facts in issue.

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993).  In *Kumho Tire Co.,*

*Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999), the Supreme Court clarified any

confusion regarding the intended reach of the *Daubert* decision, by declaring that the

trial judge must perform this "basic gatekeeping obligation" to all expert matters, not

just "scientific" matters.  In the Third Circuit, the trial court's role as a "gatekeeper"

requires proof that: (1) the proffered witness is qualified as an expert; (2) the expert

must testify about matters requiring scientific, technical, or specialized knowledge;

and (3) the expert's testimony must "fit" the facts of the case.  *In re Paoli R.R. Yard*

*PCB Litig.*, 35 F.3d 717, 741-42 (3d Cir. 1994).

> As to the first requirement, the Third Circuit has "eschewed imposing

overly rigorous requirements of expertise and [has] been satisfied with more general

qualifications."  *Paoli*, 35 F.3d at 741.  "Rule 702's liberal policy of admissibility

extends to the substantive as well as the formal qualification of experts."  *Id.*  Thus,

an expert can qualify based on a broad range of knowledge, skills, training, and

experience.

The second inquiry focuses on methodology. The inquiry into methodology is designed to ensure that an expert's opinions are based upon "'methods and procedures of science' rather than on subjective belief or unsupported speculation." *Id*. at 742. A variety of factors are used to assess reliability. *See Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 594 (D.N.J. 2002) (listing factors). Those factors most relevant to the present litigation include: (1) whether the expert's proposed testimony grows naturally and directly out of research the expert has conducted independent of the litigation; (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; (3) whether the expert has adequately accounted for alternative explanations; (4) whether the expert is being as careful as he would be in his professional work outside of the litigation context; and, (5) whether the field of expertise asserted by the expert is known to reach reliable results for the type of opinion proffered by the expert. *See id*. at 594-95.

Furthermore, the "test of reliability is 'flexible.'" *Kumho*, 526 U.S. at 141. According to the Supreme Court, "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts." *Id*. The relevance of the *Daubert* factors depends "on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id*. at 150 (internal quotation marks and citations omitted).

Finally, Daubert and Rule 702 require that the expert's testimony "fit" the facts of the case. "'Fit' requires that the proffered testimony must in fact assist the jury, by providing it with relevant information, necessary to a reasoned decision of the case." *Magistrini*, 180 F. Supp. 2d at 595 (*citing Paoli*, 35 F.3d at 743).

## 1. **Nardone's qualifications as an expert**

Defendant asserts that it is unclear in what "field of experience" Plaintiffs offer Mr. Nardone as an expert because he offers opinions about Defendant's motivations for terminating Plaintiffs' employment, as well as not rehiring those Plaintiffs who applied for the PSO-1 position. Defendant contends that Mr. Nardone's experience working within a human resources department, and acting as the CEO of a business, does not provide the basis or the background beyond that of an average lay person to set forth the ultimate opinion that Defendant's actions constituted age discrimination.

The court finds Mr. Nardone to be qualified. His curriculum vitae ("CV") indicates that he has a Bachelor's Degree in Business and an MBA,[1] and has had more than twenty-five years of experience in all aspects of business organizations. Mr. Nardone's CV indicates that he has "provided direction to business owners and managers in all facets of labor force reductions, employee reassignment, training and retraining, performance evaluations, job design, job analysis, job descriptions, pay rates, compensation and benefits design." (Doc. 90-8, Def.'s Ex. D, Nardone CV.) Mr. Nardone's CV also indicates that he has "significant management and decision making experience in labor force reductions, "for cause" and "not for cause" employment terminations, and reorganizations including cultural, structural and strategic." (*Id.*)

Based on the court's review of Mr. Nardone's report and his CV, the court concludes that he has the requisite specialized knowledge beyond that of an average lay person to be qualified to opine about whether Defendant's termination of

_____

[1] Ironically, both of Mr. Nardone's degrees are from Wilkes College now Wilkes University.

Plaintiffs' employment, and its failure to rehire those Plaintiffs who applied for the PSO-1 position, constituted a reorganization or was age discrimination. Furthermore, it is of no consequence that his opinion concerns the ultimate issue in this case. *See* Fed. R. Evid. 704(a) ("[T]estimony in the form of an opinion or inference otherwise admissible in not objectionable because it embraces an ultimate issue to be decided by the trier of fact."). Accordingly, the court finds that Mr. Nardone is qualified to give an expert opinion.

### 2. Reliability and Basis for Opinion

Defendant also challenges whether Mr. Nardone's testimony is reliable or based upon factual data. Specifically, Defendant asserts that Mr. Nardone failed to provide any data to support his opinion that Plaintiffs' dismissal was a pretext to terminate the employment of older workers. Defendant's argument is misplaced. Plaintiffs are not calling Mr. Nardone as an expert who conducted technical or specialized tests, such that "data" would be available for others to verify. Instead, Mr. Nardone based his conclusion and opinions on a review of numerous documents and exhibits in this case. Mr. Nardone's supplemental report lists twenty-five such documents. (*See* Doc. 90-10, Def.'s Ex. F, Oct. 10, 2008 Supplemental Report of Richard Nardone.) These documents range from the pleadings, depositions and other filings in this case, to the job postings, employee handbooks, policies and procedures of Wilkes University, as well as Oxford Group surveys which Defendant suggests buttress their legitimate non-discriminatory motives. This information clearly provides a sufficient base of data from which Mr. Nardone could reach his opinion.

The crux of Defendant's concern is that they simply disagree with the conclusions that Mr. Nardone draws, and the inferences that he makes to reach these

conclusions. This is proper fodder for cross-examination, but it is not the basis for excluding Mr. Nardone's expert testimony. In performing its gate-keeping function, the court does not weigh the evidence relied upon by an expert or determine whether it agrees with the expert's conclusions. Rather, determinations regarding the weight to be afforded to an expert's conclusions, and the sufficiency of the evidence relied upon by the proffered expert, are within the sole province of the jury. *See Breidor v. Sears, Roebuck and Co.,* 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge."). In arriving at his conclusions, Mr. Nardone appears to have used his practical experience and training to evaluate the alleged justifications of Defendant in restructuring its work force, and determined that its decision is not supported by the information that he reviewed, as well as the common practice of the industries with which he has been involved. This is enough. It is irrelevant that Mr. Nardone could have reached different conclusions from the information that he reviewed, it is the jury's decision how much weight to give his testimony.

Finally, the court concludes that Mr. Nardone's testimony "fits" the facts of this case as it is directly relevant to the material issues in this litigation, and it will assist the jury in reaching the ultimate issue of whether Defendant's proffered reason for terminating all Plaintiffs, and refusing to rehire some of them, was a pretext for unlawful age discrimination. Accordingly, Defendant's motion in limine to preclude the testimony of Richard Nardone will be denied.

## II.      **Plaintiffs' Motions in Limine**

**A.** **Plaintiffs' Motion in Limine to Exclude the Expert Report and Testimony of James A. Stavros, CPA**

Plaintiffs filed a detailed motion in which they take issue with almost every conclusion reached by James Stavros, Defendant's forensic accounting expert. Plaintiffs take issue with his methodology, with the reliability of his conclusions, and with the usefulness of his testimony.  In so doing, Plaintiffs seek to preclude Defendant from submitting Mr. Stavros' testimony at all because Plaintiffs contend that his report offers nothing more than bald assertions and conclusions without any basis for these conclusions.  Plaintiffs also dispute the relevance and admissibility of Mr. Stavros' testimony because his report was not updated to take into consideration the supplemental report prepared by Plaintiffs' expert

After considering the briefs and attached exhibits, the court finds that Defendant has made the preliminary showing necessary to allow Mr. Stavros to testify at trial.  Stavros is a certified public accountant with a Bachelor's Degree in Business and a Master's Degree in Business Administration.  (*See* Doc. 114-3, Def.'s Ex. A, Stavros CV at 1.)  He has published numerous articles, has made countless presentations, and has testified as an expert in almost three dozen cases in federal and state courts.  This court has little difficulty finding that he is qualified to present expert testimony.

As to Mr. Stavros' conclusions, the court has reviewed his report and finds that they are supported by sufficiently reliable evidence.  For example, for each Plaintiff, Stavros reviewed the individual's deposition, tax returns, pay stubs, personnel files from their various employers, Plaintiffs' expert report, as well as statistics from the Bureau of Labor Statistics.  This information provides a sufficient basis for Mr. Stavros' damages calculations.

The fact that Plaintiffs disagree with the calculations is to be expected; however, in performing its gate-keeping function, the court does not weigh the evidence relied upon by an expert or determine whether it agrees with the expert's conclusions. Rather, determinations regarding the weight to be afforded an expert's conclusions, and the sufficiency of the evidence relied upon by the proffered expert, are within the sole province of the jury. *See Breidor,* 722 F.2d at 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge."). What Mr. Stavros did and did not rely on in making his determinations goes to the weight that the jury should afford his testimony. *See Stecyk v. Bell Helicopter Textron, Inc.,* 295 F.3d 408, 414 (3d Cir. 2002) ("Rule 705, together with Rule 703, places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination.").

Plaintiffs will have an opportunity to cross-examine Mr. Stavros at trial regarding his own report, and Plaintiffs' expert supplemental report. Furthermore, Plaintiffs will present their own expert and will present other contrary evidence. *See Daubert,* 509 U.S. at 569 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Accordingly, the court will deny Plaintiffs' motion to exclude Mr. Stavros' expert testimony.

**B.** **Plaintiffs' Motion in Limine to Exclude the Expert Report and Testimony of Kevin R. Murphy, Ph.D, and the Expert Report of Frank J. Landy, Ph.D.**

On September 18, 2009, Defendant submitted its expert report of Frank J. Landy, Ph.D., who was to be Defendant's expert to counter the testimony of

13

Robert Nardone. Unfortunately, Dr. Landy died on January 12, 2010. Counsel for Defendant notified the court as soon as she became aware of Dr. Landy's death, and was permitted to seek review of Dr. Landy's report by a new expert. Ultimately, Defendant retained Kevin R. Murphy, Ph.D., to review Dr. Landy's report, adopt it, and prepare a supplemental report. Plaintiffs now seek to preclude Dr. Murphy from testifying at trial concerning his substitute expert report because (1) it is beyond the scope of Dr. Landy's original report, and (2) Dr. Murphy's report fails to meet *Daubert* standards of admissibility. The court will address each of these arguments in turn.

### 1. Scope of Dr. Murphy's supplemental report

Plaintiffs assert that the court should preclude Dr. Murphy from testifying at trial about his report because that report exceeds the scope of Dr. Landy's original report in that Dr. Murphy "provides several independent and additional conclusions based upon his personal review of the information and materials." (Doc. 103, Pls.' Mot. in Limine to Exclude the Expert Reports of Murphy and Landy ¶ 16.) Specifically, Plaintiffs complain that Dr. Murphy's conclusions discuss application of a United States Department of Justice survey, and addresses the need for an expanded role of campus security officers post-9/11. Plaintiffs also generally asserts that Dr. Murphy's conclusions exceed the scope of Dr. Landy's report in other ways. In the end, Plaintiffs allege that to allow Dr. Murphy's supplemental report to stand, and permit him to testify about that report at trial, would provide "an unfair advantage to Defendant, and will certainly prejudice Plaintiffs." (*Id.* ¶ 33.)

Plaintiffs are vastly overstating the prejudice they will suffer.  The court has reviewed both Dr. Landy and Dr. Murphy's reports and they are substantially similar in all material respects.  While Dr. Murphy uses different language than Dr. Landy, and reaches slightly broader conclusions, the two experts come to substantially the same conclusion: Wilkes University reorganized its campus security department, and the reorganization was not a pretext for age discrimination.

After this case was reassigned to Judge McClure upon Judge Vanaskie's elevation to the Third Circuit, a new scheduling order was issued which permitted the parties to file supplemental reports.  (*See* Doc. 85, June 11, 2010 Order.)  Dr. Murphy's original substitute report was prepared on April 23, 2010.  Plaintiffs were afforded an opportunity to have their expert review that report, comment on it, and submit a supplemental report by Judge McClure's newly established deadline of July 7, 2010.  Furthermore, Plaintiffs were provided additional time to depose Dr. Murphy.  (*See id.*)  Given that Plaintiffs' expert could comment on Dr. Murphy's substitute report, and Plaintiffs could depose Dr. Murphy, it is difficult for the court to see how Plaintiffs' will be prejudiced if Dr. Murphy is allowed to testify.

## 2. *Daubert*

Plaintiffs also contend that Dr. Murphy's report and testimony should be precluded because he offers "unsupported conclusions beyond [his] proffered expertise."  (Doc. 103, Pls.' Mot. in Limine to Exclude the Expert Reports of Murphy and Landy ¶ 58.)  Specifically, Plaintiffs contend that Dr. Murphy is not an expert in campus security and/or the public safety needs of a university.  They further challenge Dr. Murphy's conclusion regarding the changes in the job description because it is "extremely prejudicial and unreliable," in that it is not based

on upon any reliable methodology, but is simply a comparison of job descriptions. Plaintiff then lists a litany of other purported defects in Dr. Murphy's reports.

The court has reviewed Dr. Murphy's reports and finds no basis to exclude them. Dr. Murphy's CV makes it clear that he has years of experience as a professor and researcher in the field of Organizational Psychology, a field dedicated to studying the performance of the workplace. He has published eleven books and over 150 articles in such areas as performance appraisals and personnel selection. While it is true that he is not an expert in campus security, Federal Rule of Evidence 702 is not so narrow that it requires the level of precision desired by Plaintiffs. As long as an expert has specialized knowledge and expertise in the field in question, in this case, the purported reorganization of a department in a university, he can be qualified as an expert. Plaintiffs are welcome to question Dr. Murphy's qualifications at trial and can challenge whether his experiences in Organizational Psychology and workplace organization in general translate to the specifics of this case. This is the purpose of cross examination, and under the liberal standards of Rule 702, the court sees no basis at this stage of the proceedings to deem Dr. Murphy unqualified to render an opinion.

As to Dr. Murphy's conclusions, the court finds that he makes no more generalized statements than does Mr. Nardone, Plaintiff's expert. The court has no reason to believe that the parties will not be able to effectively point out the weaknesses of each other's experts through cross-examination. Since Plaintiffs will have ample opportunity at trial to question Dr. Murphy's methodology, knowledge, experience, or other relevant aspects of his report, the court sees no basis to preclude Dr. Murphy from testifying. *See Daubert,* 509 U.S. at 569 ("Vigorous cross-

examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  Accordingly, the court will deny Plaintiffs' motion to exclude Dr. Murphy's expert testimony.[2]

### C.  Motion in Limine to Exclude the Expert Report and Testimony of Dr. Bernard Siskin

Incorporated in the reports of Dr. Landy and Dr. Murphy is a statistical report of Dr. Bernard Siskin, a specialist in the application of statistics to law.  (*See* Doc. 95-2 at 28 of 42, Report of Dr. Bernard Siskin, Sept. 18, 2008.)  According to Dr. Siskin's report, he was asked by Defendant to "review the statistical data concerning the process of hiring officers to fill the revised public safety officer position[s] at Wilkes University and determine whether the hiring process had a *disparate impact* upon older workers."  (*Id.* at 30 of 42 (emphasis added).)  Dr. Siskin's concludes that the processes employed by Defendant in deciding whom it would hire for the newly created positions "did not have a *disparate impact*" on older workers.  (*Id.* (emphasis added).)

Plaintiffs assert that Dr. Siskin's report is unreliable and replete with errors and inaccuracies.  Plaintiffs also dispute the relevance of Dr. Siskin's report because this is a disparate treatment case not a disparate impact case, and statistical evidence is not necessary in a disparate treatment case.  Finally, Plaintiffs contend that even if Dr. Siskin's report is relevant, its probative value is substantially

---

[2]  Although the title of Plaintiffs motion indicates that they are seeking to also preclude the introduction of Dr. Landy's report they make no argument in either their motion or their brief about whether Dr. Landy's report would or would not be admissible.  Since expert reports are typically not admitted into evidence, the court assumes that Dr. Landy's conclusions will come into play during the testimony of Dr. Murphy who will testify about what it is that Dr. Landy concluded, about his methodology, as well as the fact that Dr. Murphy agrees with each of Dr. Landy's conclusions.

outweighed by its likelihood of misleading the jury, and should be excluded pursuant to Federal Rule of Civil Procedure 403.

For its part, Defendant asserts that Dr. Siskin's report is relevant and admissible to disprove Plaintiffs' assertion that its reorganization of security department was a pretext for age discrimination. Put differently, Defendant asserts that the evidence is admissible to give credence to its claim that the reorganization was not designed to discriminate against Plaintiffs on the basis of age.

While Defendant's argument is plausible, it ultimately is a red herring. It is of little importance whether Defendant's reorganization disparately impacted older workers or was designed to be age-neutral. Plaintiffs have asserted that they were specifically targeted for termination because of their age, thus, at best, statistical evidence that Defendant's reorganization did not have a disparate impact on older workers as a whole is only collaterally significant to whether Defendant specifically targeted Plaintiffs because of their age. While the evidence contained in Dr. Siskin's report could conceivably be relevant to the believability of Defendant's articulated non-discriminatory reason, its slight probative value in this regard is substantially outweighed by the very real possibility of misleading the jury or confusion of the issues.

To prevail in their case, Plaintiffs must first state a prima facie case of age discrimination, by demonstrating that (1) they are forty years of age or older; (2) that Defendant took an adverse action against them; (3) that they were qualified for the position in question; and (4) that they were ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009) (citations

omitted).[3] Once Plaintiffs meet this prima facie case, Defendant must simply identify a legitimate non-discriminatory reason for the adverse employment action. *Id.* at 690. Plaintiffs must then prove by a preponderance of the evidence that this reason was a mere pretext for age discrimination. *Id.* Throughout this entire process, the burden of persuasion never shifts to Defendant, but remains with Plaintiffs who must at all times demonstrate that age was *the factor* in Defendant's decision to terminate each of them, and, in the case of those who reapplied but were not rehired, that age was *the factor* in Defendant's decision not to hire them. *See Gross v. FBL Fin. Svcs. Inc.,* _____ U.S. ___, 129 S. Ct. 2343, 2351 (2009) (stating that plaintiffs in an age discrimination lawsuit must demonstrate that age was the "but-for" cause of the challenged employer's decision).

      If Defendant's statistical evidence of their hiring and firing practices were presented to the jury, there is a real likelihood that a jury could be convinced that even if it believed that Plaintiffs met their burden of proving that Defendants discriminated against them on the basis of age, because their practices did not have a disparate impact on older workers as a whole then Defendants are not liable. Given that the statistical evidence supplied by Dr. Siskin is only collaterally relevant to Defendant's defense, the court wants to eliminate the possibility that the jury will be confused as to who must prove what.

---

[3] In *Smith*, the Third Circuit reaffirmed that the familiar *McDonnell Douglas* burden shifting framework applies in ADEA cases despite the Supreme Court's skepticism expressed in *Gross v. FBL Fin. Services*, ___ U.S. ___, 129 S. Ct. 2343 (2009). In *Gross*, the Supreme Court decided that "but for" causation or causation in fact is the standard applicable to ADEA cases, and expressed doubt about any burden shifting under the ADEA. The Third Circuit in *Smith* construed *Gross* narrowly to hold only that it is improper to shift the burden of persuasion to the defendant in an age discrimination case. It then found that since *McDonnell Douglas*, at least as fashioned in the Third Circuit, keeps the ultimate burden constantly on the plaintiff that the standard still applied to ADEA claims.

Accordingly, the court will grant Plaintiffs' motion in limine to preclude the expert report and testimony of Dr. Siskin. The court will exclude this evidence based upon Federal Rule of Evidence 403, and, thus, it need not resolve the other bases for exclusion raised in Plaintiffs' motion.

### D. Motion in Limine to Exclude Evidence of Plaintiffs' Successors/Replacements Beyond those Identified in Defendant's Responses to Plaintiffs' Discovery Requests and Those Identified in this Court's February 12, 2010 Opinion and Order

In response to discovery requests sent by Plaintiffs seeking the identity of Plaintiffs' successors, Defendant stated that Plaintiffs had no successors because their positions were eliminated. Later, Defendant supplemented these answers by specifically identifying twelve individuals who were hired to fill the public safety officer position. In his memorandum denying Defendant's motion for summary judgment, Judge Vanaskie identified two other individuals who also were hired by Defendant as public safety officers. Thus, between Defendant's answers to Plaintiffs' discovery requests, and the court's February 12, 2010 decision denying Defendant's motion for summary judgment, there are fourteen persons who have been identified as replacements or successors of Plaintiffs. Plaintiffs filed a motion in limine to preclude Defendants from identifying or introducing any evidence that Plaintiffs were replaced by any persons other than these fourteen.

In response, Defendant asserts that it does not intend to introduce any evidence inconsistent with its responses in discovery, but to the extent that its seeks to do so, Plaintiffs can object at the time of trial. Additionally, since the parties must identify their witnesses in their pretrial memoranda, Plaintiffs can object at the pre-trial conference to any witnesses who were not previously disclosed. In light of

20

these concessions, the court will deny Plaintiffs' motion without prejudice to their right to renew it at the pre-trial conference or at trial.

> **E.** **Motion in Limine to Exclude Evidence that there was a "Reorganization" of the Public Safety Department and/or a "Position Elimination," as Determined in this Court's February 12, 2010 Opinion and Order Denying Defendant's Motion for Summary Judgment**

In his memorandum and order dated February 12, 2010, Judge Vanaskie reasoned that at each critical stage there were genuine issues of material fact precluding the entry of summary judgment. For instance, as to whether Plaintiffs came forward with sufficient evidence to satisfy their prima facie case, Judge Vanaskie stated that "the fact that Plaintiffs satisfactorily performed their jobs as Campus Security Officers is clearly sufficient to create a triable issue of fact on whether each was qualified for the PSO 1 position." (*See* Doc. 68, Mem. & Order at 13, Feb. 12, 2010.) As to the issue of whether Plaintiffs produced enough evidence that they were replaced by sufficiently younger employees, Judge Vanaskie determined that for purposes of Plaintiffs' prima facie case, Plaintiffs could rely on a simple comparison of ages to "satisf[y] their burden at the summary judgment stage." (*Id.* at 15-16.) Judge Vanaskie also determined that Defendant had come forward with a legitimate nondiscriminatory reason for Plaintiffs' termination, namely, that the July 2003 termination of the entire security department was a reorganization of the office with newly created positions. (*Id.* at 16.)

Finally, as to whether Defendant's proffered reason was merely a pretext for discrimination, Judge Vanaskie found that Plaintiffs had produced sufficient evidence that the PSO-1 position was not newly created and that "the duties of the two positions were so similar that no reorganization actually occurred."

21

(*Id.* at 18.)  Plaintiffs have latched onto this last statement as a definitive declaration that no reorganization, in fact, occurred, and have filed the instant motion in limine to preclude Defendant from asserting as a defense that Plaintiffs' employment was terminated because of a reorganization and position elimination.

Plaintiffs have radically misconstrued Judge Vanaskie's opinion.  A mere two paragraphs after the language quoted above, Judge Vanaskie wrote the following, which was the summation of all of his previous statements:

> Viewing the evidence in the light most favorable to Plaintiffs and weighing the parties' contentions, this Court finds that a reasonable jury could find that the "reorganization" defense advanced by Wilkes is "unworthy of credence."  Moreover, a jury could find that the re-designation of job titles was simply a way to replace older security officers with younger ones.  Accordingly, summary judgment will be denied.

(*See* Doc. 68, Mem. & Order at 19, Feb. 12, 2010 (citations omitted).)  Thus, it is clear that Judge Vanaskie's February 12, 2010 opinion did not definitively conclude that a reorganization did not occur, nor could it.

In deciding a motion for summary judgment, a district court is to view the evidence in the light most favorable to the non-moving party, here the Plaintiffs. *See Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001) (stating that the court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party).  It is through this lens that the court resolves summary judgment motions.  Plaintiffs did not file a motion for summary judgment, and they cannot now contend that the court made a definitive ruling on an element of their case.  The court did no such thing.  Instead, Judge Vanaskie determined that there was sufficient evidence to create a genuine issue of material fact concerning Plaintiffs' claims and that a reasonable jury *could* conclude that Defendant's

22

proffered reasons for terminating Plaintiffs' employment were a pretext for unlawful age discrimination.  This is a far cry from saying that a reasonable jury *must* reach this conclusion.  Accordingly, Plaintiffs' motion will be denied.

> **F.    Plaintiffs' Motion in Limine to Exclude Admission of General Release Agreement, Declare them Unenforceable and Preclude any Defense Based upon the Releases**

Upon their termination from employment, Plaintiffs were requested to read and sign a "General Release Agreement" on July 7, 2003, the day that they received them, and the day that they were informed that their employment was terminated.  Plaintiffs were told that if they signed the releases that day, they would be provided with severance pay and the continuation of their group health insurance through July 31, 2003, as well the continuation of tuition remission benefits through May 31, 2004, for those employees eligible to receive these benefits.  If the releases were not signed on July 7, 2003, Plaintiffs would not receive severance pay or tuition remission benefits.  All six Plaintiffs received, signed, and returned the release immediately after receiving it.  Among other things, the release purports to bar Plaintiffs from asserting any claim under the ADEA or the PHRA.  (*See* Doc. 99-2, General Release Agreement ¶ 9.)  In the instant motion, Plaintiffs seek to exclude admission of the General Release Agreements, declare them unenforceable, and preclude Defendant from asserting any defense based upon a purported waiver of Plaintiffs' rights contained in the release.

Upon the court's review of the release agreement, it is clear that it does not comply with the requirements of the Older Workers Benefit Protection Act (OWBPA), 29 U.S.C. § 626(f).  The OWBPA imposes specific requirements for releases covering ADEA claims.  In particular, among other things, OWBPA

provides that a waiver of claims is not knowing and voluntary unless the individual is advised in writing to consult with an attorney prior to executing the agreement, and the individual is given a period of at least twenty-one days within which to consider the agreement. *See id.* at § 626(f)(1)(E), (F)(i). Defendant concedes that these provisions were not contained in the release agreements presented to Plaintiffs. (*See* Doc. 108, Def.'s Br. in Opp'n to Pl.'s Motion in Limine to Exclude Releases at 3.) Accordingly, the releases are invalid and unenforceable as to any purported waiver of the Plaintiffs' ADEA claims, and the court will grant Plaintiffs' motion as to those claims.

Plaintiffs contend that the court should deem the releases invalid as to their PHRA claims as well; however, at this stage of the proceedings the court cannot make this determination. The requirements of OWBPA are inapplicable to PHRA claims. *See Griest v. Pa. State Univ.*, 897 A.2d 1186, 1188 (Pa. Super. Ct. 2006) (*citing Wastak v. Lehigh Valley Health Network*, 342 F.3d 281 (3d Cir. 2003).) Thus, the effect of the release with regard to PHRA claims is determined "by the ordinary meaning of the language contained therein." *Wastak*, 342 F.3d at 295 (*citing Strickland v. Univ. of Scranton*, 700 A.2d 979, 986 (Pa. Super. 1997).)

Thus far, Defendant has not sought to enforce the releases to bar Plaintiffs' PHRA claims, though it appears from Defendant's brief that they intend to present evidence at trial on this subject. Plaintiffs have also not presented sufficient evidence that would allow the court to determine whether the releases are invalid under traditional contract factors. Accordingly, the court will deny Plaintiffs' motion without prejudice as to their claims under the PHRA.

Defendants will be permitted to introduce the releases at trial for the limited purpose of eliciting testimony that would assist the court in determining whether Plaintiffs have waived their PHRA claims. Defendants may not elicit any testimony suggesting that these releases bar Plaintiffs' ADEA claims.

Defendant should be mindful that any contract purporting to release potential employment discrimination claims is valid only if it was knowingly and voluntarily executed. *See Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 522 (3d Cir. 1988), *superseded by statute on other grounds.* Specifically, the court will consider the totality of the circumstances surrounding its execution, and consider the following non-exhaustive factors:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time the plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Cirillo v. Arco Chem. Co.,* 862 F.2d 448, 451 (3d Cir. 1988) (citing *Coventry*, 856 F.2d at 523). The court will also consider "whether there is evidence [that the employer procured the release through] fraud or undue influence, or whether enforcement of the release would be against the public interest." *Cuchara v. Gai-Tronics Corp.*, 129 F. App'x 728, 731 (3d Cir. 2005).

While the enactment of the OWBPA rendered the Third Circuit's totality of the circumstances test irrelevant for ADEA purposes, *see Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1539 (3d Cir.1997) ("Congress intended to occupy

25

the area of ADEA releases and, in doing so, to supplant the common law . . ."), there is no indication that the test is inappropriate in the context of Plaintiffs' PHRA claims. Therefore, the parties should be mindful that this is the standard the court will employ if presented with a motion to enforce the release agreements as to Plaintiffs' PHRA claims.

**G.** **Motion in Limine to Exclude any Evidence of Plaintiffs Bokar's, Monsuer's, and Potoski's Failure to Reapply for the Public Safety Officer 1 Position after their Termination**

Upon their termination from employment, all Plaintiffs were told that they could reapply for the newly-created position of Public Safety Officer 1. Plaintiffs Chabala, O'Donnell, and Pace reapplied, but were not hired. Plaintiffs Potoski, Bokar and Monsuer did not reapply. In their complaint, Plaintiffs were careful to plead both wrongful termination claims and refusal to hire claims as to Plaintiffs Chabala, O'Donnell, and Pace. (*See* Doc. 1, Compl., Counts I & II.) In contrast, Plaintiffs pled only wrongful termination claims on behalf of Potoski, Bokar, and Monsuer. (*See id.*) In the instant motion, Plaintiffs seek to preclude Defendants from raising Plaintiffs Potoski's, Bokar's, and Monsuer's failure to reapply because it is irrelevant to these Plaintiffs' wrongful termination claim.

It is undisputed that termination and failure to rehire are discrete acts both of which are actionable under the ADEA. *See O'Conner v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). It is also true that the failure to reapply for a vacant position does not preclude Plaintiffs from establishing their age discrimination case. *See Smith v. City of Allentown*, 589 F.3d 684, 689-90 (3d Cir. 2009) (establishing factors necessary to prove age discrimination claim). Nonetheless, the court will not

preclude Defendant from raising these Plaintiffs' failure to reapply for the open positions.

As Defendant points out in its brief, these Plaintiffs' failure to reapply for the PSO-1 position is relevant to whether they took timely and appropriate steps to mitigate their damages. Plaintiffs knew that these positions were available, but chose not to apply for them. Defendant is permitted to elicit this fact to demonstrate that these Plaintiffs could have attempted to mitigate their damages but did not do so.

Accordingly, the court will not preclude this evidence from being raised at trial. However, the court recognizes the potential for prejudice to Plaintiffs if the jury were to conclude that these Plaintiffs' failure to reapply was a necessary element of their wrongful termination claim. Thus, in its charge, the court will instruct the jury that they are permitted to consider these Plaintiffs' failure to reapply only for the limited purpose of their failure to mitigate their damages. In their proposed jury instructions, the parties shall submit a proposed limiting instruction as to this issue.

## IV.        Conclusion

The court will issue an order consistent with the foregoing discussion.


                                          s/Sylvia H. Rambo
                                          United States District Judge

Dated: September 22, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEONARD POTOSKI, JR.,
JAMES MONSUER,
RICHARD R. CHABALA,          :     CIVIL NO. 3:06-CV-2057
JOSEPH C. BOKAR,
JOSEPH L. PACE, and
PATRICK O'DONNELL,           :

       Plaintiffs           :     JUDGE SYLVIA H. RAMBO

    v.                         :

WILKES UNIVERSITY,           :

       Defendant            :

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS
HEREBY ORDERED THAT:**

(1)     Defendant's Motion to Preclude the Submission of Future Lost
Wage Claims to the Jury, (Doc. 88), is **GRANTED**, and Plaintiffs shall not present
any evidence concerning front pay;

(2)     Defendant's Motion to Preclude the Imposition of Liquidated
Damages at Trial, (Doc. 89), is **GRANTED IN PART AND DENIED IN PART** as
follows:

(a) The motion is **DENIED WITHOUT PREJUDICE** as to the issue
of liquidated damages under the ADEA.  Defendant may raise this issue at the close
of Plaintiffs' case and/or at the close of all of the evidence; and,

(b) The motion is **GRANTED** as to the issue of liquidated damages
pursuant to the PHRA.

1

(3) Defendant's Motion to Preclude the Testimony of Richard Nardone, (Doc. 90), is **DENIED;**

(4) Plaintiffs' Motion to Preclude the Expert Report and Testimony of James Stavros, (Doc. 91), is **DENIED;**

(5) Plaintiffs' Motion to Preclude the Expert Report and Testimony of Dr. Kevin Murphy and Expert Report of Dr. Frank Landy, (Doc. 103), is **DENIED;**

(6) Plaintiffs' Motion to Preclude the Expert Report and Testimony of Dr. Bernard Siskin, (Doc. 95), is **GRANTED.**

(7) Plaintiffs' Motion to Exclude any Evidence of Plaintiffs' Successors/Replacements Beyond those Identified in Defendant's Responses to Discovery Requests and those Identified in the Court's February 12, 2010 Opinion and Order, (Doc. 93), is **DENIED WITHOUT PREJUDICE;**

(8) Plaintiffs' Motion to Exclude Evidence that there was a "Reorganization" or "Position Elimination" as Determined by the Court's February 12, 2010 Opinion and Order, (Doc. 101), is **DENIED;**

(9) Plaintiffs' Motion to Exclude the General Release Agreements, (Doc. 99), is **GRANTED IN PART AND DENIED IN PART** as follows:

(a) The motion is **GRANTED** as to Plaintiffs' claims under the ADEA, and Defendant is precluded from invoking the release in an attempt to bar those claims;

(b) The motion is **DENIED WITHOUT PREJUDICE** as to Plaintiffs' claims under the PHRA. Defendant may elicit evidence at trial concerning the effect of the release as to these claims; and,

(10)    Plaintiffs' Motion to Exclude any Evidence of Plaintiffs Bokar's, Monsuer's, and Potoski's Failure to Reapply for the PSO-1 position, (Doc. 97), is **DENIED.**

s/Sylvia H. Rambo
United States District Judge

Dated: September 22, 2010.